United States Court of Appeals,

Fifth Circuit.

No. 92-8386.

CJC HOLDINGS, INC., d/b/a ArtCarved, A Corporation, Plaintiff-Appellant,

v.

WRIGHT & LATO, INC., Defendant-Appellee.

April 29, 1993.

Appeal from the United States District Court for the Western District of Texas.

Before POLITZ, Chief Judge, JOLLY and DAVIS, Circuit Judges.

POLITZ, Chief Judge:

CJC Holdings, Inc. and its attorneys appeal the imposition of sanctions under Rule 11 of the Federal Rules of Civil Procedure. Concluding that the district court misapprehended the plausibility of the legal position urged in the offending filing, we reverse.

Background

CJC Holdings, d/b/a ArtCarved, sued Wright & Lato, Inc. for trade dress infringement and obtained a default judgment in the court *a%22 quo.* After moving unsuccessfully to set aside that judgment, Wright & Lato appealed to this court but did not post a supersedeas bond to stay the judgment. ArtCarved took steps to collect the judgment by moving to register it in the district court in New Jersey, Wright & Lato's principal place of business. Wright & Lato did not respond to that motion. Instead it filed an action in the District of New Jersey asking that court to declare the judgment of the district court in Texas void for lack of personal jurisdiction and to enjoin ArtCarved from enforcing it. The New Jersey court denied relief.[1] ArtCarved then asked the court *a%22 quo* to sanction Wright & Lato and its counsel under 28 U.S.C. § 1927 and its inherent powers for their suit in New Jersey. Finding that it lacked jurisdiction to sanction conduct occurring in another court, the district court refused to impose sanctions on Wright & Lato. Rather, after notice and hearing,

_____

[1] Promptly thereafter, Wright & Lato filed a proper supersedeas bond and obtained a stay. We affirmed the trial court's refusal to set aside the default judgment but vacated its award of attorneys' fees. 979 F.2d 60 (5th Cir.1992).

it sanctioned ArtCarved under Rule 11 for failing to conduct a reasonable legal inquiry as to the proper forum for its motion, 142 F.R.D. 648. ArtCarved timely appealed.

Analysis

We review imposition of Rule 11 sanctions for abuse of discretion. If the district court relied on a materially incorrect view of the law, we must vacate the sanctions.[2] We conclude that the district court so erred herein.

The issue before us is *not* whether the Western District of Texas was the proper forum for ArtCarved's motion for sanctions. Rule 11 does not require that the legal theory espoused in a filing prevail.[3] The essential issue is whether the signatories of ArtCarved's motion fulfilled their duty of reasonable inquiry into the relevant law. Indicia of reasonable inquiry into the law include the plausibility of the legal theory espoused and the complexity of the issues raised.[4] Even if erroneous, a legal posture does not violate Rule 11 unless it is "unreasonable from the point of view both of existing law and of its possible extension, modification, or reversal."[5]

The district court relied principally on our decision in *In re Case*[6] to determine that it lacked power to sanction Wright & Lato's conduct before the district court of New Jersey. We held therein that a bankruptcy court could not sanction conduct occurring in a separate state court proceeding under 28 U.S.C. § 1927 or its inherent powers. *Case,* however, is in apparent tension with *Chambers v. NASCO, Inc.*[7] In *Chambers,* the Supreme Court rejected the argument that the district court did not have the inherent power to sanction a party for his conduct before other tribunals. It declared: "As long as a party receives an appropriate hearing, ... the party may be sanctioned for abuses of

---

[2]*Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990); *Smith v. Our Lady of the Lake Hospital, Inc.,* 960 F.2d 439 (5th Cir.1992).

[3]*Smith International, Inc. v. Texas Commerce Bank,* 844 F.2d 1193 (5th Cir.1988).

[4]*Thomas v. Capital Security Services, Inc.,* 836 F.2d 866 (5th Cir.1988) (en banc).

[5]*Smith International,* 844 F.2d at 1200.

[6]937 F.2d 1014 (5th Cir.1991).

[7]--- U.S. ----, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

process occurring beyond the courtroom, such as disobeying the court's orders."[8] The district court carefully distinguished *Chambers* on its facts. It inadvertently overlooked, however, that ArtCarved's counter-argument that *Chambers* governed was at least reasonable.

Although we attempted in Case to reconcile our holding with *Chambers,* it is at least arguable that the cases cannot be reconciled; in that event, *Chambers* controls. The argument that the facts of the case at bar are closer to those in *Chambers* than in *Case* is at least plausible.

*Case* involved a note that the debtor in bankruptcy had signed as part of his reorganization plan. When he defaulted, the creditor bank sued in state court. As a defense and counterclaim Case maintained that he had been fraudulently induced to sign the note. The bankruptcy proceedings were reopened and the bankruptcy court found that Case had raised this defense solely for purposes of delay. We partially reversed the bankruptcy court's award of sanctions, stating:

> The state court proceeding in the instant case is completely collateral to the proceedings in bankruptcy court. The conduct of the parties in the state action cannot be said to affect the exercise of the judicial authority of the bankruptcy court or limit the bankruptcy court's power to control the behavior of parties and attorneys in the litigation before it. Inherent power must arise from the litigation before that court. Although the substantive issue in the state court proceeding is the same, the conduct of the parties in that suit is unconnected to the present action.[9]

By contrast, the bad-faith conduct in *Chambers* was undertaken in direct defiance of the sanctioning court. *Chambers* was an action for specific performance of a contract to sell a television station. After signing the contract the owner, Chambers, changed his mind. His efforts to avoid the sale included, *inter alia,* a filing with the Federal Communications Commission seeking permission to replace existing transmission facilities with a new transmission tower to be built on a site beyond the reach of the contract. This filing not only directly violated the district court's order to maintain the status quo pending the outcome of the litigation but also, if successful, would have eviscerated the court's ability to enforce specific performance if it so ordered.

In the case at bar, Wright & Lato asked the district court in New Jersey to nullify the order of the district court in Texas and to enjoin its enforcement. Of critical importance, according to

---

[8]--- U.S. at ----, 111 S.Ct. at 2139.

[9]937 F.2d at 1023-24.

ArtCarved, was Wright & Lato's representation to the New Jersey court that the Texas court had refused to consider its objections to personal jurisdiction after it had admitted to the Texas court that the case was not in a procedural posture for consideration of that issue. We express no opinion about the propriety of Wright & Lato's conduct; that matter is not before us. We agree with ArtCarved, however, that it might be characterized as the type of defiant, bad-faith conduct towards the Texas court that the Supreme Court intended to reach in *Chambers* and that we distinguished from the facts before us in *Case.*

As we recognized in *Thomas,* misapplication of Rule 11 can chill counsel's enthusiasm and stifle the creativity of litigants in pursuing novel factual or legal theories,"[10] contrary to the intent of its framers.[11] For this reason, a trial court should not impose Rule 11 sanctions for advocacy of a plausible legal theory, particularly where, as here, the law is arguably unclear.

We REVERSE the imposition of sanctions against ArtCarved and its attorneys.

---

[10]*Thomas,* 836 F.2d at 885.

[11]Fed.R.Civ.P. 11, Advisory Committee Notes.